SHARUN M. COLEMAN,

Plaintiff,

v.

SHERIFF OF COOK COUNTY, ET AL.,

Defendants.

No. 16 C 2682

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Sharun M. Coleman ("Coleman") has sued defendants Sheriff of Cook County (in his official capacity), Cook County, and Cook County Sheriff's Merit Board for denying her equal employment opportunities in violation of Title VII of the Civil Rights Act and for a writ of mandamus. Currently before the Court are: (1) Coleman's motion for partial summary judgment [102]; (2) the Sheriff and Cook County's cross-motion for summary judgment [122]; and (3) the Merit Board's cross-motion for summary judgment [129]. For the following reasons, the Court denies Coleman's motion [102], denies the Sheriff and Cook County's cross-motion [122], and defers ruling for 30 days on the Merit Board's cross-motion [129].

## Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all

evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

### A.    Relationship Between Sheriff And Merit Board In Hiring

Before any job with the Cook County Sheriff's Office is posted for hire, the Sheriff's designated chain of command must give its approval. R. 126 ¶ 9 (Sheriff and Cook County's Response to Coleman's L.R. 56.1 Statement); R. 132 ¶ 9 (Merit Board's Response to Coleman's L.R. 56.1 Statement). Then the Merit Board—a seven-member board established by Illinois statute (*see* 55 ILCS 5/3-7002) and appointed by the Sheriff with the advice and consent of the Cook County Board— posts notice on the Sheriff's Office website. R. 126 ¶ 4; R. 132 ¶¶ 4, 10; R. 135 ¶ 4 (Coleman's Response to Merit Board's L.R. 56.1 Statement).

Pursuant to an Order from the Sheriff, the Merit Board collects all applications and conducts investigations and interviews to ensure that applicants meet the hiring criteria. R. 126 ¶ 11; R. 132 ¶ 11. Applicants first must pass written exams. R. 135 ¶¶ 12-13. Applicants then must pass a physical ability test. *Id.* ¶ 14.

If an applicant passes the written and physical tests, the applicant must be fingerprinted, drug tested, and complete a Personal History Questionnaire. *Id.* ¶ 15.

The next step is for a Merit Board investigator to conduct an investigation. R. 126 ¶ 12; R. 132 ¶ 12; R. 135 ¶ 4. The investigator reviews the applicant's documents, conducts a background search, interviews the applicant, conducts more background searches to verify the responses, and prepares an Investigative Summary Report. R. 126 ¶ 13; R. 132 ¶ 13; R. 134 ¶ 2 (Coleman's Response to Sheriff and Cook County's L.R. 56.1 Statement); R. 135 ¶¶ 17-19.

At least five members of the Merit Board review each applicant's file (usually about 200 pages long) and individually determine whether to certify or reject the applicant as qualified for the position. R. 126 ¶¶ 15-16; R. 132 ¶¶ 15-16; R. 135 ¶¶ 10, 20-21. If an applicant is not certified by the Merit Board, he or she will not be considered for employment by the Sheriff. R. 126 ¶ 18; R. 132 ¶ 18. If an applicant is certified by the Merit Board, his or her file is sent to the Sheriff's Bureau of Human Resources, which has its own tests and procedures. R. 126 ¶ 14; R. 132 ¶ 14; R. 135 ¶ 22.

A certified applicant remains eligible for hire for two years after certification. R. 135 ¶ 22. Ultimately, the Sheriff's Office determines which, if any, individuals to hire from the pool of certified applicants. *Id.* ¶ 23.

## B.   Coleman's Correctional Officer Applications

Coleman is an African-American resident of the Northern District of Illinois. R. 126 ¶ 1; R. 132 ¶ 1; R. 135 ¶ 3. In 2007, Coleman applied through the Sheriff's

Office to be a correctional officer at the Cook County Jail. R. 126 ¶ 19; R. 132 ¶ 19; R. 135 ¶ 24. She was interviewed by the Merit Board, and five Merit Board members voted to certify her. R. 126 ¶¶ 20-21; R. 132 ¶¶ 20-21; R. 135 ¶ 25. But the Sheriff never hired her, and Coleman's application lapsed in 2010. R. 126 ¶ 22; R. 132 ¶ 22; R. 135 ¶ 26.

Coleman applied again for the same position in 2014. R. 135 ¶ 27. But she failed the physical in August 2014 and again in December 2014. R. 135 ¶ 27; R. 126 ¶ 39; R. 132 ¶ 39; R. 134 ¶ 45.

Coleman applied to be a correctional officer once again in 2015. R. 126 ¶ 23; R. 132 ¶ 23; R. 135 ¶ 28. This time, she passed the physical. R. 126 ¶ 39; R. 132 ¶ 39; R. 134 ¶ 45. She also passed the written exams. R. 126 ¶ 39; R. 132 ¶ 39. Coleman's Personal History Questionnaire and investigation revealed the following:

- Coleman responded "Yes" to the question, "Have you ever taken anything from former or current employer or anyone (*i.e.*, office supplies, food, tools, cash property, etc.)?" (R. 134 ¶ 14);

- Coleman had relationships with men who were incarcerated and had visited at least one man in jail (R. 134 ¶ 46; R. 135 ¶ 31);

- Coleman had 18 prior employment positions in a variety of fields (including as a dental assistant, a Federal Express driver, a security officer, and a U.S. Post Office deliverer), several of which lasted a short duration (R. 134 ¶ 16; R. 135 ¶ 30);

- Coleman's driver's license had been suspended two or more times, she was arrested for driving on a suspended license, and she had multiple moving violations, for one of which she failed to appear at trial (R. 134 ¶¶ 38-39, 41; R. 135 ¶ 33);

- Coleman was rejected for employment by the Illinois Department of Corrections in 2014 because of suspended licenses (R. 134 ¶ 17); and

- Coleman had a tax lien filed against her in 2010 that was released in May 2015 (R. 134 ¶ 37; R. 135 ¶ 32).

Investigator Michael Bosco, a retired police officer, was assigned to interview Coleman in June 2015. R. 126 ¶ 24; R. 132 ¶ 24; R. 134 ¶¶ 1, 3, 5. During the interview, Bosco did not make racial comments or demean Coleman. R. 134 ¶ 6.

After the interview, Bosco prepared an Investigative Summary Report. That report states that Coleman had a child with Melvin Boyd in 2011, that Boyd is a convicted felon, and that Coleman did not list Boyd as a felon in her application as required. R. 126 ¶¶ 25-26; R. 132 ¶¶ 25-26. The statement in the Investigative Summary Report that Boyd is a felon is wrong; Boyd pleaded guilty to a non-felony offense and was placed on supervision. R. 126 ¶¶ 27-29; R. 132 ¶¶ 27-29. The parties dispute whether Bosco asked Coleman about Boyd during her interview. R. 126 ¶ 31; R. 134 ¶ 50.

The Investigative Summary Report also incorrectly states that Coleman filed for Chapter 7 bankruptcy in 2011. R. 126 ¶ 35; R. 132 ¶ 35. In fact, Coleman filed for bankruptcy in 2004. R. 126 ¶ 36; R. 132 ¶ 36. The fact that Coleman filed for

bankruptcy in 2004 was included in her 2007 application that the Merit Board certified. R. 134 AF ¶ 3 (Coleman's Additional Facts in Support of L.R. 56.1 Statement with respect to Sheriff and Cook County).[1]

On July 31, 2015, five members of the Merit Board reviewed Coleman's application and voted not to certify Coleman for employment. R. 126 ¶ 40; R. 132 ¶ 40; R. 135 ¶ 35. The Merit Board notified Coleman of its decision in an email that did not contain its reasoning. R. 126 ¶ 42; R. 132 ¶ 42. None of the Board members recalls Coleman's file or why they rejected her. R. 126 ¶ 43; R. 132 ¶ 43. After Coleman was not certified, the Merit Board continued to review and certify applicants for the position of correctional officer. R. 126 ¶ 44; R. 132 ¶ 40.

### C.    Other Correctional Officer Applications

Bosco has significant experience interviewing correctional officer applicants; he interviewed 73 applicants between 2014 and 2016. R. 134 ¶ 4. Bosco's usual practice is to discuss with an applicant any part of the application that he thinks is inaccurate or incomplete. R. 126 ¶ 46; R. 132 ¶ 46.

Coleman identifies three comparator Caucasian applicants with respect to whom she claims Bosco followed his usual practice of giving them a chance to explain and correct information about connections to criminality. First, Coleman points to Daniel Golden, a Caucasian man who Bosco interviewed in March 2015. R.

---

[1]    Because the Sheriff and Cook County did not file a response to Coleman's Statement of Additional Facts, those facts are deemed admitted. *See, e.g.*, *Austin v. City of Chicago*, 2018 WL 1508484, at *1 (N.D. Ill. Mar. 27, 2018) ("If a party inadequately responds to an opponent's Rule 56.1 statement, the court may deem the opponent's factual allegations admitted.").

126 ¶¶ 47-48; R. 132 ¶¶ 47-48. Bosco noted in Investigative Summary Report for Golden that a number of police reports listed a Daniel Golden as the victim or reporter of a crime at Golden's former home address. R. 126 ¶ 49; R. 132 ¶ 49. Bosco asked Golden to comment on this finding, and he replied that his father had the same name as him and the reports were his father's, not his. R. 126 ¶ 50; R. 132 ¶ 50. Golden had only three jobs from 2006 to 2014, he was never issued a traffic citation, and he never filed for bankruptcy. R. 134 ¶ 47. The Sheriff ultimately hired Golden as a correctional officer. R. 126 ¶ 51; R. 132 ¶ 51.

Second, Coleman points to Henry Renken, who is also Caucasian, and who Bosco interviewed in October 2015. R. 126 ¶¶ 52-53; R. 132 ¶¶ 52-53. Renken's father was incarcerated for bank robbery and use of a firearm. R. 126 ¶ 54; R. 132 ¶ 54. Renken's Investigative Summary Report states that Renken was asked about his reference to his father being a convicted felon, and Renken "testified that he had no idea of his father[']s intention to rob a bank" or to use Renken's "bicycle as a get away vehicle." R. 126 ¶ 55; R. 132 ¶ 55. Renken had only two jobs since graduating from high school, no record of bankruptcy, and no traffic citations. R. 134 ¶ 48. The Sheriff hired Renken as a correctional officer. R. 126 ¶ 56; R. 132 ¶ 56.

Third, Coleman points to Nicolas Christopher, who is Caucasian, and who Bosco interviewed in December 2014. R. 126 ¶¶ 57-58; R. 132 ¶¶ 57-58. Christopher was arrested in 2011 and pleaded guilty to disorderly conduct. R. 126 ¶ 59; R. 132 ¶ 59. Christopher's Investigative Summary Report explains that he was in a car with his girlfriend's family when her brothers began yelling obscenities;

Christopher denied yelling at anyone, but he said he took his attorney's advice to plead guilty and expunge the arrest later. R. 126 ¶ 60; R. 132 ¶ 60. Christopher had three jobs since graduating from high school, no record of bankruptcy, and his only vehicle violation was for disregarding a stop sign. R. 134 ¶ 49. The Sheriff hired Christopher as a correctional officer. R. 126 ¶ 61; R. 132 ¶ 61.

Coleman also points to a number of correctional officer applicants certified by the Merit Board in 2014 and 2015 with certain issues akin to Coleman's in their Investigative Summary Reports. Jessica Lofton, who the Merit Board certified in June 2015, filed for bankruptcy in 2010, was arrested for speeding, had been subject to supervision for speeding, and owed several thousand dollars in parking fines. R. 134 AF ¶¶ 4-6. Luis Vasquez, who the Merit Board certified in June 2015, filed for bankruptcy in 2015. *Id.* ¶¶ 7-8. Jorge Lizalde, who the Merit Board certified in December 2014, had several open, negative accounts with an outstanding balance of approximately $19,000, had twice been convicted for speeding, had his license suspended, and had been convicted for driving on a suspended license. *Id.* ¶¶ 9-11. Sergio Cale, who the Merit Board certified in May 2015, was twice convicted of speeding, given supervision for disregarding a stop sign, and had his license suspended. *Id.* ¶¶ 12-13. And LaRoyce Tankson, who the Merit Board certified in February 2010, visited a friend at Cook County Jail. *Id.* ¶¶ 14-15.

### D. This Case

Coleman filed her original complaint against Sheriff and Cook County in February 2016. R. 1. In September 2016, Coleman filed an amended complaint

adding the Merit Board as a defendant. R. 18. The amended complaint alleges the Sheriff denied Coleman equal employment opportunities in violation of Title VII due to racial animus on the part of the Merit Board, and seeks to hold Cook County liable for indemnification. *Id.* ¶¶ 5, 17-18. In the alternative, Coleman seeks a state law "writ of mandamus compelling the Merit Board to certify her for employment as a correctional officer" and for other equitable relief. *Id.* ¶ 19.

In November 2016, the Merit Board moved to dismiss Coleman's state law mandamus claim. R. 28. In February 2017, Judge Darrah granted the Merit Board's motion, finding that because Coleman did not assert a federal claim against the Merit Board, there was "no basis for federal subject matter jurisdiction over [Coleman's] state law claim for mandamus." R. 55 at 4.

The case was transferred to this Court in March 2017. R. 74. In September 2017, this Court granted Coleman's motion to reconsider Judge Darrah's opinion dismissing Coleman's mandamus claim for lack of subject matter jurisdiction. R. 94. The Court held that Coleman's Title VII claim and state law mandamus claim form part of the same case or controversy because the underlying factual allegations are identical, meaning this Court has supplemental jurisdiction over the mandamus claim under 28 U.S.C. § 1367. *Id.* The opinion noted: "Coleman's mandamus claim seeks a writ of mandamus compelling the Merit Board to certify her for employment as a correctional officer, but this Court finds that Coleman's mandamus claim is proper only insofar as she seeks a more thorough and factually correct investigation by the Merit Board." *Id.* at 7 n.2.

The case proceeded through discovery. It was during discovery that Coleman first learned that Bosco's Investigative Summary Report contained erroneous information about Boyd. R. 126 ¶ 32; R. 132 ¶ 32. When asked in his deposition to explain how he made a mistake regarding Boyd being a felon (and thus about Coleman's failure to disclose her relationship with a felon), Bosco answered: "I'm guessing that at the time I did the report that the offense that he arrested for was a felony, and I failed to note that he had been given supervision for that offense," making it a non-felony. R. 134 ¶ 7.

In response to an interrogatory asking the Sheriff to state every legitimate nondiscriminatory reason for not hiring Coleman, the Sheriff stated:

> By virtue of Chapter 55 of the Illinois Compiled Statutes, the Cook County Sheriff's Merit Board, a separate entity from the Sheriff's Office, is created to, inter alia, establish standards and qualifications for appointment as a corrections officer. Appointment of county corrections officers "shall be made from those applicants who have been certified by the Board as being qualified for appointment." See 55 ILCS 5/3-7800. Corrections officers must first be certified by the Merit Board before they can be hired by the Sheriff's Office. The Plaintiff was not certified by the Merit Board as being qualified for the appointment in connection with her 2014 employment application.

R. 126 ¶ 32; R. 132 ¶ 32.

In November 2017, Coleman moved for partial summary judgment. R. 102. After Coleman filed her motion, the Merit Board agreed to reconsider an application from Coleman without the incorrect information about Boyd and with the correct date of her bankruptcy. R. 135 ¶¶ 36-37; R. 142 ¶¶ 1-2 (Merit Board's Responses to Coleman's L.R. 56.1 Statement of Additional Facts). This Court stayed the case for 90 days to give the Merit Board that opportunity. R. 135 ¶ 38.

In April 2018, the Court lifted the stay. At a hearing on April 2, 2018, the Court explained:

> the cause of Coleman not being hired right now [is Coleman] not filling out [a new Personal History Questionnaire]. If she doesn't want to, that's fine. I can't force her to. And if they don't want to hire her because she hasn't, I doubt I would overturn a decision by the Merit Board to not rehire—nor not to hire a prison guard who won't provide them with information about what I assume are a variety of contacts and matters of history that they need to investigate before they put somebody in a sensitive position like that.

*Id.* ¶ 40. Coleman's counsel responded that Coleman "would consider" "a small amount of updating" to the Personal History Questionnaire, but Coleman interpreted defendants to be "telling her to reapply for the job, which is not the relief she's seeking." R. 142 ¶ 3; R. 131-14 at 8. The parties then briefed Coleman's motion for partial summary judgment and defendants' cross-motions for summary judgment.

## Analysis

### I. Title VII Claim Against Sheriff And Cook County

The Sheriff and Cook County move for summary judgment as to Coleman's Title VII claim, and Coleman cross-moves for summary judgment as to liability on that claim. The Sheriff and Cook County first dispute whether the Sheriff can be held liable for the Merit Board's actions. Both sides further argue that the undisputed evidence entitles them to summary judgment as to Title VII liability. The Court addresses each argument in turn.

#### A. Sheriff's Liability For Merit Board Actions

The Sheriff argues that he cannot be liable for any decisions concerning Coleman when it was the Merit Board's decision not to certify her in 2015. The Sheriff emphasizes that he never even reviewed Coleman's 2015 application. Coleman counters that the Merit Board is an agent of the Sheriff for purposes of Title VII liability. The Court agrees with Coleman.

The Sheriff does not meaningfully dispute that if the Merit Board is its agent, it can be liable for discrimination on the part of the Merit Board. Indeed, Title VII incorporates agency principles. *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 71-72 (1986). Thus, under "Title VII . . . an employer cannot simply delegate portions of its hiring or promotion procedure to a third party and escape liability if the third party develops discrimination problems." *Moskowitz v. City of Chicago*, 1993 WL 478938, at *4 (N.D. Ill. Nov. 16, 1993) (collecting cases).

But the Sheriff contests that the Merit Board is its agent, emphasizing that the Merit Board is a separate body created by statute. *See* 55 ILCS 5/3-7008. The Court does not find this fact dispositive. The Illinois Appellate Court has expressly described the Merit Board as "an agency of a unit of local government, specifically of the Cook County Sheriff." *Roman v. Cook Cty. Sheriff's Merit Bd.,* 17 N.E.3d 130, 155 (Ill. App. Ct. 2014). And as Judge Lee explained in *Bless v. Cook Cty. Sheriff's Office*, 2016 WL 958554, at *5 (N.D. Ill. Mar. 8, 2016):

> Although the [Merit] Board was created by statute and not by the Sheriff's Office, the Sheriff appoints its members (subject to approval by the "county board"). *See* 55 Ill. Comp. Stat. 5/3-7002. Moreover, the Board's only apparent purpose is to create employment policies and make employment decisions *for* the Sheriff's Office, *see id., et seq.,* and some of this authority is shared with the Sheriff, *see id.* §§ 5/3-7008-09

(Sheriff decides who is hired and promoted from among candidates previously approved by the Board), § 5/3-7011 (Sheriff can suspend employees for up to 30 days without Board approval); § 5/3-7012 (Sheriff brings charges for termination to the Board).

The undisputed facts in this case further support that the Sheriff's designated chain of command must approve any job posting, and that the Merit Board collects applications and conducts investigations pursuant to an order from the Sheriff. R. 126 ¶¶ 9, 11; R. 132 ¶¶ 9, 11.

Addressing a similar relationship between the City of Montgomery and a City-County Personnel Board, the Eleventh Circuit held that the Board was the agent of the City for Title VII purposes where state law gave the Board the power to exercise duties "traditionally reserved to the employer," including establishing a pay plan, formulating minimum standards for jobs, and evaluating employees. *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984). Similarly here, Illinois state law and the Sheriff's order delegate to the Merit Board duties traditionally reserved to the employer, including posting openings, collecting applications, and evaluating applicants. R. 126 ¶¶ 4, 10-11. The Court therefore holds that the Sheriff has an agency relationship with the Merit Board and may be sued under Title VII for any discriminatory acts of the Merit Board.[2] Cook County also may be liable as an indemnitor of the Sheriff.[3]

---

[2] The Court agrees with Coleman that a contrary holding could have the effect of insulating from liability even blatantly discriminatory actions by the Merit Board. The Seventh Circuit has indicated that a Title VII claim against the Merit Board would be "frivolous" because the Merit Board does not act as an employer. *Averhart v. Sheriff of Cook County*, 752 F.3d 1104, 1106 (7th Cir. 2014). And in prior lawsuits, "the Merit Board has denied that it is a suable separate legal entity." *See*

**B.     Merits**

Coleman claims she is entitled to partial summary judgment as to the Sheriff and Cook County's liability on her Title VII claim under the *McDonnell Douglas* burden-shifting framework. The Sheriff and Cook County cross-move for summary judgment on Coleman's Title VII claim.

Although the Seventh Circuit has recently "do[ne] away with the need for separate tests and 'mosaics'" to categorize evidence in discrimination cases, it has explained that "the well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Courts therefore conduct the *McDonnell Douglas* analysis if the parties present their arguments "in those terms," as Coleman does. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). After applying the *McDonnell Douglas* framework, the Court then assesses the evidence "cumulatively . . . to determine whether it permits a reasonable factfinder" to determine that the challenged conduct "was attributable to . . . race." *Id.*

---

*Bless*, 2016 WL 958554, at *5 (citing *Tate v. Cook Cnty. Sheriff's Merit Bd,* 2007 WL 2962785, at *1-2 (N.D. Ill. Oct. 4, 2007); *Shannon v. Cook Cnty. Sheriff's Merit Bd.,* 1998 WL 171782, at *4 (N.D. Ill. Apr. 10, 1998); *Mayes v. Elrod,* 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)).

[3]     Cook County does not dispute that it is liable as an indemnitor for any judgment against the Sheriff. *E.g.*, *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 947-48 (7th Cir. 2003). As such, the Sheriff and Cook County's liability rises and falls together.

1.    ***McDonnell Douglas* Framework**

Under the *McDonnell Douglas* framework, a plaintiff may prove a *prima facie* case of racial discrimination in a failure-to-hire case by showing that:

> (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected (in other words, he suffered an adverse employment action); and (4) the position remained open and the employer continued to seek applicants from persons of similar qualifications.

*Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015). If the plaintiff succeeds in making this showing, "the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment action." *Id.* "If the employer offers such a reason, the burden reverts to the plaintiff who must show that the stated reason is a pretext, which raises a reasonable inference of unlawful discrimination." *Id.* In applying this framework, "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

a.    ***Prima Facie* Case**

There is no dispute that Coleman has satisfied the first, third, and fourth elements of her *prima facie* case. Coleman is African-American, she was not certified by the Merit Board in July 2015 (thus suffering an adverse employment action), and after she was not certified, the Merit Board continued to consider other applicants from persons of similar qualifications.

But the Court finds issues of material fact as to the second element—whether Coleman was qualified to be certified. Beyond the need to pass written and physical

15

exams, there is no evidence in the summary judgment record as to objective, definitive qualifying criteria for the correctional officer position. It is true, as Coleman emphasizes, that she passed the written and physical exams in 2015, and she was previously certified in 2007. But the composition of the Board was different in 2007. More importantly, many potentially problematic facts revealed in Coleman's investigation occurred after 2007, including a number of short-duration jobs, the Illinois Department of Corrections' failure to re-hire Coleman in 2014 due to the suspension of her driver's license, and the tax lien filed against Coleman in 2010. Although Coleman has presented evidence that other applicants were certified who had certain of the same facts in their histories, the record does not support a finding as a matter of law one way or another—either that Coleman was qualified to be certified or that she was not qualified to be certified. Thus, the same question of fact that prevents granting summary judgment to Coleman on this point also prevents granting the Sheriff and Cook County's motion for summary judgment on this point.

### b.     Legitimate Non-Discriminatory Reason

Although there is certainly record evidence of potential non-discriminatory explanations for the Merit Board's failure to certify Coleman, the Court finds this issue to be a matter of dispute for the jury as well. To meet their burden, the Sheriff and Cook County must "point to reasonably specific facts that explain how [the Merit Board] formed its opinion." *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018). None of the Merit Board members who declined to certify

Coleman in 2015 remembers why they made their decision. Nor do the Sheriff and Cook County put forth evidence of hiring guidelines or any written standard supporting their decision. The first (and seemingly most likely) explanation for the Merit Board's failure to certify Coleman is the Investigative Summary Report's inaccurate information about Coleman's failure to report her relationship with a convicted felon. This explanation, although non-discriminatory in and of itself, may be found to be entangled with discrimination for the reasons explained in the next section. The Sheriff and Cook County also offers other potential explanations, including Coleman's admission to taking office supplies from a current or former employer, Coleman's large number of jobs, Coleman's tax lien, Coleman's driving record, and Coleman's visits with two men detained at Cook County Jail. But the state of the record does not lead the Court to conclude as a matter of law that the Sheriff and Cook County have discharged their burden. That will be for the jury to determine.

Coleman says the Court should not consider any of the Sheriff and Cook County's reasons because the Sheriff and Cook County did not identify them in response to Coleman's interrogatory asking for every legitimate reason for not certifying Coleman. In response to that interrogatory, the Sheriff and Cook County relied on their legal argument that the Sheriff did not hire Coleman because she was not certified by the Merit Board, a separate legal entity. R. 126 ¶ 45.

The Court declines to eliminate these other explanations from its consideration simply because the Sheriff relied on a legal argument in its

interrogatory response. This is not a situation like in *Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004), on which Coleman relies, where a party failed to disclose an expert witness as required by Fed. R. Civ. P. 26(a)(2)(A), and the Seventh Circuit upheld the exclusion of that witness as a discovery situation. *See id.* at 758.

The Court also disagrees with Coleman that the Sheriff and Cook County have failed to "introduce any admissible evidence" (*Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 493 (7th Cir. 2008)) to support their proffered reasons. The Sheriff and Cook County's reasons are supported by admissible record evidence in the forms of Coleman's Personal History Questionnaire, Bosco's Investigative Summary Report for Coleman, and deposition testimony in this case. The Court agrees with Coleman, however, that the record does not contain a single, clear explanation for the Merit Board's decision, which supports the Court's conclusion that a trial is warranted.

### c.    Pretext

The Court further finds that Coleman's comparator evidence creates questions of material fact as to pretext. *See, e.g., Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) ("a discrimination plaintiff may employ . . . comparator evidence to discharge her burden at the pretext stage"). Coleman has identified three Caucasian comparators—Golden, Renken, and Christopher—whose investigations, like Coleman's, identified a connection to criminality. Like Coleman, they were all interviewed by Bosco. But unlike Coleman, all three of these comparators were

given a chance to explain and clarify the circumstances of the identified incidents, and those explanations were included in their Investigative Summary Reports. Taking the facts in the light most favorable to Coleman, Coleman was given no such opportunity by Bosco. Such an opportunity could have allowed Coleman to explain that Boyd was not in fact a felon, which in turn would have prevented the mistaken information in her Investigative Summary Report that she had concealed her relationship with a felon. In this way, Bosco deviated from his usual practice of giving applicants a chance to explain and correct information about connections to criminality. This is evidence of potential discrimination on the part of Bosco that warrants a trial.

The Sheriff and Cook County respond that Golden, Renken, and Christopher are not similarly situated enough to serve as comparators. To qualify as similarly situated, the proffered comparator must be "directly comparable" to the plaintiff "in all material respects." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014). There must be "enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Coleman*, 667 F.3d at 847. But "[w]hether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Id.* at 846-47; *accord Srail v. Village of Lisle,* 588 F.3d 940, 945 (7th Cir. 2009); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

The Sheriff and Cook County point out that Golden, Renken, and Christopher did not have as many prior jobs as Coleman, the same financial history, or the same driving history. The problem, however, is that there is not a clear record as to whether any of these factors contributed to Bosco's treatment of Coleman or of the comparators, or ultimately made a difference in Coleman not being certified or Golden, Renken, and Christopher being certified. None of the Merit Board members recalls why Coleman was not certified. And the clearest and most likely explanation is the mistaken information in the Investigative Summary Report that Coleman had concealed her relationship with a felon. Again, the three comparators were given an opportunity by Bosco to explain similar ties to criminality, and in the case of Golden, to correct an inaccuracy (*i.e.*, that his father with the same name was the subject of police reports and not him). Taking the facts in the light most favorable to Coleman, Coleman was not given that opportunity. *See, e.g.*, *Coleman*, 667 F.3d at 853 (comparator evidence showing that rule was not enforced "evenhandedly" against plaintiff and comparators helped create a genuine issue of material fact as to pretext). Whether these comparators are similarly situated to Coleman is "a question for the fact-finder." *Coleman*, 667 F.3d at 847.

### 2.    Cumulative Assessment

Stepping back and considering all the evidence "cumulatively" (*David*, 846 F.3d at 224) leads the Court to the same conclusion. In addition to the comparator evidence discussed above with respect to Golden, Renken, and Christopher, Coleman introduces evidence that a number of applicants who were certified had

significant driving issues and financial issues, or had contact with jail detainees. Although Coleman does not identify these applicants' race so as to make them direct comparators, this evidence bears on the overall legitimacy of certain of the Sheriff and Cook County's explanations for their failure to certify Coleman. The evidence taken in the light most favorable to Coleman could lead "a reasonable factfinder to conclude" that Coleman's race caused the difference in treatment by Bosco that in turn lead to her not being certified by the Merit Board. *Ortiz*, 834 F.3d at 765; *see also David*, 846 F.3d at 224.

Other evidence offered by the Sheriff and Cook County includes the fact that as of July 2016, the Cook County Department of Corrections employed 1,557 African-Americans and 1,348 Caucasians. R. 134 ¶ 12. But this statistical evidence is too general to bear on the Court's assessment. As the Seventh Circuit has explained, a "focus on the racial composition of the workforce . . . is misplaced"; what matters is specific information about the racial makeup and qualifications of the hiring pool. *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 829 (7th Cir. 2006); *accord Kier v. Commercial Union Ins. Co.*, 808 F.2d 1254, 1258 (7th Cir. 1987). Nor is the lack of evidence that Bosco made any racially charged comments or had overt racial animus dispositive, as the Sheriff and Cook County suggest (R. 123 at 4), where Coleman has set forth other evidence creating genuine issues of material fact warranting a trial.

## II.     Mandamus Claim Against Merit Board

Coleman and the Merit Board cross-move for summary judgment on Coleman's state law claim requesting a writ of mandamus "ordering the Merit Board to certify [Coleman] for employment as a correctional officer." R. 104 at 13; *see also* R. 18 ¶ 19 (amended complaint seeking a "writ of mandamus compelling the Merit Board to certify [Coleman] for employment as a correctional officer"). Under Illinois law, "[m]andamus is an extraordinary remedy," and "[a] writ of *mandamus* will be awarded only if the petitioner establishes a clear right to the relief requested, a clear duty of the public official to act, and clear authority in the public official to comply with the writ." *People ex rel. Alvarez v. Howard*, 72 N.E.3d 346, 350 (Ill. 2016).

Coleman argues that the Merit Board violated "a clear duty" (*id.*): its own rule to conduct a "thorough investigation" (R. 126 ¶ 14; R. 132 ¶ 14) of job applicants. Coleman cites *Nolan v. Hillard*, 722 N.E.2d 736 (Ill. App. Ct. 1999), for the principle that the Merit Board "is under a legal duty to follow its own rules." *Id.* at 748. And Coleman emphasizes that her Investigative Summary Report contained two significant errors: the inaccurate fact that she had failed to report her relationship with a convicted felon, and an incorrect and much more recent year of her bankruptcy filing.

The Merit Board does not meaningfully dispute that Bosco's Investigative Summary Report for Coleman contained two mistakes, or that these mistakes constituted a violation of the Merit Board's rules. The Merit Board "agree[s] to

provide . . . Plaintiff a new investigation" (R. 143 at 4) in which "the portions of the investigation related to plaintiff withholding information regarding her relationship with a convicted felon" are excluded, and "the date of [Coleman's] bankruptcy [is] corrected" (R. 130 at 7).

But the Merit Board contests whether there is "a clear right to [Coleman's] relief requested" (*Alvarez*, 72 N.E.3d at 350): compelling the Merit Board to certify Coleman as a correctional officer. The Court agrees with the Merit Board that this is not relief it can provide. As this Court has already found, "Coleman's mandamus claim is proper only insofar as she seeks a more thorough and factually correct investigation by the Merit Board." R. 94 at 7 n.2. Coleman asks the Court to reconsider this ruling, but she cites no authority in support. R. 104 at 13 n.2. And her position is contrary to established law. As the Illinois Appellate Court explained in *Mabwa v. Mendoza*, 19 N.E.3d 1252, 1257 (Ill. App. Ct. 2014), "[m]*andamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised." *Id.* at 1257; *accord McFatridge v. Madigan*, 989 N.E.2d 165, 170 (Ill. 2013) ("A writ of *mandamus* is appropriate when used to compel compliance with mandatory legal standards but not when the act in question involves the exercise of a public officer's discretion.").

Coleman says she is simply asking the Court to "direct the Merit Board to follow its own rules." R. 136 at 11. But ordering the Merit Board to follow its own rules means ordering the Merit Board to conduct a thorough and factually complete

investigation pursuant to the detailed and discretionary process set forth above. This Court does not have authority to order the Merit Board "to reach a particular decision or to exercise its discretion in a particular manner" by certifying Coleman. *See Mabwa*, 19 N.E.3d at 1257. Nor can the Court order the Merit Board to circumvent its usual consideration process by allowing Coleman to bypass the step of providing a new, updated Personal History Questionnaire. *See* R. 136 at 14 (explaining that Coleman refuses to fill out a new Personal History Questionnaire); R. 130 at 12 (explaining that the Merit Board will "not require the additional interview or physical and mental evaluations," but it does require that Coleman "provide a new, updated [Personal History Questionnaire]"). Significant time has passed since Coleman's 2015 application, and the Merit Board is entitled to up-to-date facts when re-considering Coleman's application.

The Court therefore denies Coleman's motion for summary judgment on her mandamus claim. The Court defers ruling on the Merit Board's cross-motion for summary judgment on that claim. The Court gives Coleman 30 days to consider whether she will reframe her mandamus claim (either through an amended complaint or a stipulation by the parties) to seek the only relief the Court is able to provide (which the Merit Board agrees to provide): a thorough and factually correct investigation of her application with a new, updated Personal History Questionnaire. Otherwise, the Court will grant the Merit Board's motion for

summary judgment based on a finding that Coleman has not "establishe[d] a clear right to the relief requested." *See Alvarez*, 72 N.D.2d at 350.[4]

## Conclusion

For the foregoing reasons, the Court denies Coleman's motion for partial summary judgment [102], denies Cook County and the Sheriff's cross-motion for summary judgment on Coleman's Title VII claim [122], and defers ruling for 30 days on the Merit Board's cross-motion for summary judgment on Coleman's mandamus claim [129]. A status conference is scheduled for September 10, 2018 for Coleman to report on how she wishes to proceed on her mandamus claim.

ENTERED:

_Thomas M. Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 7, 2018

---

[4] Because the Court agrees with the Merit Board that the Court lacks legal authority to order the Merit Board to certify Coleman, it need not address the Merit Board's alternative argument that the record reflects multiple reasons why the Merit Board could have validly declined to certify Coleman aside from the identified errors, making summary judgment in Coleman's favor ordering the Merit Board to certify her improper. The Court notes for the record, however, that it agrees with the Merit Board that whether Coleman is qualified to be certified separate and apart from the errors is a disputed issue inappropriate for summary judgment.